IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

V.                                      CRIMINAL NO.  2:09-cr-00022-KS-MTP

RODERICK R. EDWARDS

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

Defendant Roderick R. Edwards has filed a motion asking this Court for compassionate

release and a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i) due to COVID-19. ECF

# 40.[1]  The United States respectfully opposes the motion. This Court should deny the motion

with prejudice given that Defendant has been vaccinated against COVID-19 and therefore does

not present an extraordinary and compelling reason permitting relief and because of the danger

Defendant presents to the community, the time remaining on his sentence, and all other

considerations under 18 U.S.C. § 3553(a).

**Factual Background**

On December 9, 2009, Defendant was convicted of one count of possession with intent to

distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  This Court

sentenced him to a total of 36 months in prison[2]. ECF # 78.  He is scheduled to be released on

February 28, 2031.  On January 27, 2022, Defendant filed a motion with this Court seeking

compassionate release under 18 U.S.C. § 3582(c)(1)(A).  ECF # 40.

---

[1] Defendant also filed a motion for compassionate in case number 2:14-cr-5 on February 24,
2021.  ECF #160.  This court denied that motion on April 14, 2021. ECF #170.

[2] Defendant's supervised release in the instant case was revoked on June 23, 2014, and he was
sentenced to serve 60 months in prison.  Subsequently, Defendant was sentenced in case number
2:14-cr-5 and sentenced to serve 178 months consecutive to the 60 months' revocation.  *See* ECF
#134 in case number 2:14-cr-5.

## I.  BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to Defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for Defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[3]  On April 3, 2020, the Attorney General gave the Director

---

[3] This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.); *United States v. Rodriguez-Collazo*, 2020 WL 2126756, at *2-3 (E.D. Pa. May 4, 2020) (Younge, J.); *United States v. Pettiway*, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) (Bartle, J.); *United States v. Torres*, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020)

of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. *See* Exhibit A (Mem. for Director of Bureau of Prisons).  This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable

---

(Kearney, J.); *United States v. Cruz*, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

achievement given the known risks of viral spread in a congregate prison setting.[4]  Further, the incidence of positive cases in all BOP institutions has been sharply declining for months, with nearly all institutions currently reporting no cases or case tallies in the single digits.

## II.     Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available, and then offered the vaccines to all willing staff members and inmates, beginning first with staff members (who present a more likely vector for COVID-19 transmission into an institution), and then offering the vaccines to inmates in order of priority of need in accordance with CDC guidelines. As a court observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

---

[4] According to the U.S. Census Bureau, the estimated resident adult population of the United States (age 18 and over) on July 1, 2019, was 255,200,373. *See* https://www.census.gov/data/tables/time-series/demo/popest/2010s-national-detail.html. As of January 9, 2022, there have been approximately 834,077 adult deaths in the United States from COVID-19. *See* https://covid.cdc.gov/covid-data-tracker/#datatracker-home (there have been approximately 694 deaths of persons under age 18, *see* https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#SexAndAge, and we subtract that sum from the national total). The estimated number of adult deaths is thus approximately 0.327% of the pre-pandemic adult population. According to BOP, the average population of BOP-managed institutions and community-based facilities in March 2020 was 157,756. As of November 17, 2021, there have been 266 COVID-related deaths in those facilities, which is 0.168% of the March 2020 average population, that is, approximately 35% below the national rate. In asserting that the BOP experience has been relatively worse than the national experience, defendants have cited studies from much earlier time periods in the pandemic, since which time the national mortality numbers steadily and sadly increased at a more dramatic rate.

As of this writing, through an intensive effort over the past months, BOP has offered the vaccine to every inmate in BOP-managed institutions, with the exception of some inmates who were recently admitted at a facility after the administration of vaccines at that facility. BOP has administered a total of 292,819 doses to inmates and staff. Going forward, BOP will continue to offer vaccines to newly arrived inmates, and to those inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available.

At Yazoo City FCC, where the defendant is held, BOP has fully vaccinated 465 staff members, and 2,828 of their 3,521 inmates (which is 80.3% of the current inmate population and does not account for those additional inmates who declined vaccination).

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

### III.   Discussion

#### A.  Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[5]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the 5th Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, the courts of appeals have recognized that it continues to provide important "guideposts," *United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021); see *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."); *United States v. Aruda*, 993 F.3d

---

[5] The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." See *Dillon v. United States*, 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

797, 802 (9th Cir. 2021). The issue is particularly immaterial where, as here, the motion rests on medical grounds, and the Commission has stated a well-accepted definition of the circumstances that qualify as extraordinary. See *United States v. High*, -- F.3d --, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021) (while the Fourth Circuit holds that "§ 1B1.13 is not applicable to defendant-filed motions under § 3582(c)," the court recognizes that "it defines, in the medical context, the same substantive term that applies to BOP-filed motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for defendant-filed motions.").

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)    Medical Condition of the Defendant.—

(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)    experiencing deteriorating physical or mental health because of the

aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. See, e.g., United States v. Neal, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); United States v. Adeyemi, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

## B.  COVID-19 and Compassionate Release

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); see *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam) (not precedential) ("[T]he existence of some health risk to every federal prisoner as

the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); see also *United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. See *United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)). See also *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

The CDC's list of risk factors was most recently updated on December 14, 2021. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that "can make you more likely to get severely ill

from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[6]

## Argument

The Court should deny Defendant's motion with prejudice on either of two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction; second, Defendant has not met his burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

---

[6] Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the government maintained—and most courts agreed—that inmates with conditions on the "might" list did not present an extraordinary basis for relief. See, e.g., United States v. Durham, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (Cogburn, J.); United States v. Moldover, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. See https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

I. **The Court Should Deny the Motion on the Merits Because Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction.**

Here, the defendant presents the risk factor of obesity. However, the defendant has been vaccinated. Defendant received the first dose of the Pfizer COVID-19 vaccine on November 15, 2021 and the second dose on December 16, 2021. *See* exhibit B. Defendant is now fully vaccinated. In addition, the defendant is receiving proper treatment for his health ailment. *See* exhibit B. As a result, the defendant's motion for compassionate release should be denied.

As the government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist, as the available vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus. The CDC has consistently and strongly advised that every person 12 years of age and older receive one of the vaccines that has received emergency use authorization from the FDA. The CDC states that the vaccines are "safe and effective," and "[g]etting vaccinated prevents severe illness, hospitalizations, and death." https://www.cdc.gov/aging/covid19/covid19-older-adults.html (accessed January 9, 2022).

There has been widespread recent reporting that the Delta variant of COVID-19 is now the most prevalent variant causing new infections in the United States, posing a significant risk

to unvaccinated persons. The CDC reports, however, that the approved vaccines are proving highly effective against the Delta variant, stating, "FDA-authorized COVID-19 vaccines protect against Delta and other known variants." The CDC adds: "Infections happen in only a small proportion of people who are fully vaccinated, even with the Delta variant. Some breakthrough infections are expected, but remain rare. . . . All vaccines are particularly effective against severe illness, hospitalization and death."[7]

Accordingly, once a vaccine is available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone. *See United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19] generally lack merit.").

The vast majority of courts have agreed with this conclusion..[8] Courts routinely deny relief to an inmate who has been vaccinated. *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021) (Brown, J.) (citing many cases); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United*

---

[7] https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftransmission%2Fvariant.html (accessed October 4, 2021); *see also* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (accessed January 9, 2022) ("Vaccines in the US are highly effective, including against the Delta variant.").

[8] The citations provided in this memorandum, of decisions denying motions of defendants who are vaccinated or declined a vaccine, represent just a fraction of the countless consistent decisions in recent months on these points. The government will provide additional citations to the Court at its direction.

*States v. Otero-Montalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021) (Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates"); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (Gallagher, J.) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an 'extraordinary and compelling reason' to consider compassionate release."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) (Kenney, J.) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021) (Jackson, J.) (relief is denied notwithstanding obesity, chronic kidney disease, and hypertension, in light of vaccination and CDC information regarding efficacy; "With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration").

Likewise, courts routinely deny compassionate release to an inmate who declined vaccination. The Seventh Circuit stated:

> [A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release. The risk is self-incurred. . . . The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective . . . . A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). *See also, e.g.*, *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) (Gallagher, J.) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release."); *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) (Lew, J.) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release"); *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) (Mihm, J.) ("Courts across the country appear to have consistently ruled that an inmate's

refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) ("Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (Beetlestone, J.) (the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, stating that "the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."); *United States v. Cooper*, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) (Joyner, J.) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) (Torreson, J.) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine.").

As noted, the vaccines are proving effective against the now-prevalent Delta variant, and therefore courts continue to deny compassionate release motions based on the risk from COVID-19. *See, e.g., United States v. Gibbs*, 2021 WL 3929727, at *3 (E.D. Pa. Sept. 2, 2021) (Bartle, J.) (the court does not accept the argument that vaccinated inmate is at more risk as a result of the Delta variant; "Although defendant has hypertension which the CDC recognizes as a potential risk factor for more serious cases of COVID-19, defendant has been inoculated against COVID-19 with a highly effective vaccine. As such he is currently at an extremely low risk of developing a serious case of COVID-19. His medical condition is not an extraordinary and compelling reason at this time for granting compassionate release because of the COVID-19 pandemic."); *United States v. Jackson*, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021) (Goldsmith, J.) ("While it is true that new variants—particularly the Delta variant—are on the rise, the CDC states that '[c]urrent data suggest that COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States.' Thus, Jackson could have mitigated his fear of COVID-19 variants by getting vaccinated. Accordingly, the Court will not grant Jackson release based on his alleged fear of variants."); *United States v. Long*, 2021 WL 3185600, at *5 (D.D.C. July 28, 2021) (Friedman, J.) (citing sources reporting the effectiveness of the Pfizer vaccine against the Delta variant, and stating, "Because Mr. Long has received both doses of the Pfizer-BioNTech COVID-19 vaccine, the presence of the delta variant does not make his circumstances extraordinary and compelling."); *United States v. Ogunlana*, 2021 WL 3129327, at *2 (D. Md. July 23, 2021) (Gallagher, J.) (denying relief to defendant who declined vaccine; "The scientific evidence suggests that the available vaccines provide significant protection against complications from COVID-19 infection, even with the emergence and current prevalence of the 'Delta variant.'"); *United States v. Newsome*, 2021 WL

4066332, at *6 (E.D. Cal. Sept. 7, 2021) (Drozd, J.) (vaccinated inmate is not at undue risk due to the Delta variant; "At this point, medical evidence strongly suggests that fully vaccinated individuals remain very well protected against becoming severely ill from COVID-19 even if they contract it."); *United States v. Austin*, 2021 WL 3669318, at *2 (D. Idaho Aug. 18, 2021) (Winmill, J.) (relief is not warranted in light of vaccination; the threat of the Delta variant is not sufficient); *United States v. Barnett*, 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (Preska, J.) (relief is not warranted in light of Pfizer vaccination; the threat of the Delta variant is not sufficient); *United States v. Meza-Orozco*, 2021 WL 3630519, at *4 (W.D. Wash. Aug. 17, 2021) (Settle, J.) ("The Court understands that the science is still evolving as to vaccine efficacy and the Delta variant, but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death"; inmate received Janssen vaccine); *United States v. Graf*, 2021 WL 3856087 (E.D. Wis. Aug. 27, 2021) (Stadtmueller, J.) (denying motion for reconsideration based on emergence of the Delta variant, given that vaccines remain effective); *United States v. Kearney*, 2021 WL 3883593, at *10 (D. Md. Aug. 31, 2021) (Hollander, J.) (the defendant does not present extraordinary circumstances in light of his refusal of a vaccine; the existence of the Delta variant does not change this assessment); *United States v. Swarn*, 2021 WL 4077344, at *2 (E.D. Mich. Sept. 8, 2021) (Murphy, J.) (relief denied to inmate who declined vaccination; given the CDC's assessment, "concerns over variants, at this time, do not change the Court's analysis."); *United States v. Evans*, 2021 WL 3912547, at *2 (E.D. Wis. Sept. 1, 2021) (Pepper, C.J.) ("While the defendant's concerns about the Delta variant are valid ones, he had the ability to mitigate the risk to himself by getting vaccinated.").

It is possible that the scientific consensus may shift if, for example, the efficacy of the vaccines changes over time, or variants emerge that bypass the vaccines. The government will

address those issues as they arise. But at present, absent such a "shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.). *See also United States v. Hill*, 2021 WL 1807285, at *2 (N.D. Ohio May 5, 2021) (Polster, J.) ("[I]f such scientific evidence later materializes, nothing will prevent Hill from filing another motion for compassionate release."); *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) ("Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation.").

In sum, absent a significant change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end the unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("[A] defendant's medical condition must be one of substantial severity and irremediability."). At present, the defendant does not present any such condition.[9]

---

[9] The government further recognizes that an individual who contracts COVID-19, even if protected against severe illness, may later suffer from "long-haul" symptoms. This is not a basis for compassionate release at this time. If an inmate who previously suffered from COVID-19 later develops "long-haul" symptoms, his condition may be assessed at that time.

For all of these reasons, compassionate release is not warranted here. Further, even if the defendant is at elevated medical risk, relief should be denied. This Court must then consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. See *United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (not precedential) (summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (per curiam) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence and the defendant's criminal history and institutional infractions).

At present, these considerations—including the defendant's risk of danger to the community, his vaccination, and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly against relief.

## II. Defendant Still Poses a Significant Danger to the Safety of the Community and the § 3553(A) Factors Strongly Weigh Against His Release.

Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). These factors include the nature and circumstances of the

offense and defendant, the necessity of the sentence to reflect the seriousness of the offense, deter other criminals, and protect the public, the kind of sentences available, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

Defendant would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone.  In addition, the § 3553(a) factors strongly disfavor a sentence reduction.  The Defendant's sentence was imposed to reflect the seriousness of his underlying offense, to promote respect for the law, and to provide just punishment for his conviction.  A reduction in his sentence would demean the serious nature of the offense.  The relevant Section 3553(a) factors weigh against compassionate release of the Defendant.

Accordingly, in light of Defendant's record and the totality of relevant circumstances, this Court should deny the motion for compassionate release.

## Conclusion

For these reasons, this Court should deny Defendant's motion for compassionate release on the merits.

Respectfully submitted on this the 7th day of February 2022.

DARREN J. LAMARCA
United States Attorney

By:    s/*Shundral H. Cole* _____
        Shundral H. Cole (103003)
        Assistant U.S. Attorney
        1575 20th Avenue
        Gulfport, MS 39501
        (228)563-1570 (phone)
        (228) 563-1571 (fax)
        Shundral.Cole@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system to all ECF participant(s).

*s/Shundral H. Cole*
SHUNDRAL H. COLE
Assistant U.S. Attorney